**UNITED STATES of America,**
**Appellee,**

v.

**Kahbir AHMAD, a/k/a Terry Brisbane,**
**Defendant–Appellant.**

**Docket No. 98–1467.**

United States Court of Appeals,
Second Circuit.

Argued April 30, 1999.

Decided Jan. 26, 2000.

Irving Cohen, New York, NY, for Appellant.

David C. Finn, Assistant United States Attorney (Mary Jo White, United States Attorney for the Southern District of New York, Lewis J. Liman, Assistant United States Attorney, on the brief), New York, NY, for Appellee.

Before: WALKER, LEVAL and POOLER, Circuit Judges.

JOHN M. WALKER, JR., Circuit Judge:

On February 5, 1997, the police searched defendant-appellant Kahbir Ahmad's home pursuant to a search warrant. They found the following firearms in a

hallway closet: (1) a semi-automatic pistol with a removed and obliterated serial number; (2) a 16–gauge sawed-off shotgun; (3) four silencers; and (4) seven other firearms (five semi-automatic pistols with serial numbers intact, a revolver and a long rifle). Following a one-week jury trial in the United States District Court for the Southern District of New York (Miriam Goldman Cedarbaum, *District Judge* ), Ahmad was convicted of possession of a firearm with a removed and obliterated serial number in violation of 18 U.S.C. § 922(k); possession of an unregistered sawed-off shotgun in violation of 26 U.S.C. § 5861(d); and possession of four unregistered silencers in violation of 26 U.S.C. § 5861(d). On August 3, 1998, Ahmad was sentenced to a term of imprisonment of 110 months, to be followed by three years' supervised release, and $300 in mandatory assessments.

On appeal, Ahmad argues that the district court erred in making a series of upward adjustments under the United States Sentencing Guidelines Manual (the "Guidelines") to his base offense level of 18. Specifically, Ahmad challenges (1) the increase of four levels under § 2K2.1(b)(1)(D) based upon a finding that the crime involved thirteen firearms; (2) a two-level increase under § 2K2.1(b)(4) for possession of a firearm with an obliterated serial number; (3) a four-level increase under § 2K2.1(b)(5) for transferring a firearm with reason to know that it would be used or possessed in connection with another felony; and (4) a two-level increase under § 3C1.1 for obstruction of justice.

■ All of these upward adjustments followed the recommendations of the Probation Department's Pre–Sentence Report. We will examine each of Ahmad's contentions in turn, bearing in mind that we review a district court's interpretation and application of the Guidelines *de novo,* and its findings of related facts for clear error. *See United States v. Zagari,* 111 F.3d 307, 323 (2d Cir.1997).

## I.  The Number of Firearms.

■ We believe that the district court erred when it determined the number of firearms to be included for purposes of Guidelines § 2K2.1(b)(1) to be thirteen (requiring a four-level enhancement), as contended by the government, and not six (requiring a two-level enhancement), as contended by defendant. Section 2K2.1(b)(1) specifically directs that we count only the firearms involved in "the offense." The Guidelines define "the offense" to mean "the offense ·of conviction and all relevant conduct under § 1B1.3." Guidelines § 1B1.1, Application Note 1(*l* ). Section 1B1.3 includes as relevant conduct offenses that would be grouped for sentencing purposes under § 3D1.2(d) and that were "part of the same course of conduct or common scheme or plan as the offense of conviction." Guidelines § 1B1.3(a)(2). In addition to these general prescriptions for relevant conduct, there is a specific limitation on relevant conduct in the guideline pertaining to firearms. Application Note 9 of § 2K2.1 specifies that "only those firearms that were unlawfully sought to be obtained, unlawfully possessed, or unlawfully distributed" are to be included "[f]or purposes of calculating the number of firearms under subsection (b)(1)."

Ahmad's possession of the seven additional firearms does not constitute a federally proscribed act. Congress prohibits a limited class of persons, including felons, fugitives, drug-addicts, mentally ill persons, and illegal aliens, from possessing any firearm without a license. *See* 18 U.S.C. § 922(g). The general population is prohibited only from possessing a much narrower class of firearms, such as unregistered sawed-off shotguns, unregistered silencers and other unregistered destructive devices. *See* 26 U.S.C. § 5845(a). Ahmad is not a prohibited person, and the seven firearms outside the charge do not fall into the prohibited class of firearms. Thus Ahmad's possession of the uncharged firearms violated no federal law.

The government argues that while federal law does not prohibit possession of the seven firearms outside the charge, they were properly counted because Ahmad violated state and local law by possessing the additional firearms without a state or local license. *See* N.Y. Penal Law §§ 265.00(3)(a), 265.01(1), 265.20(a)(3) (misdemeanor to possess pistols and revolvers without license); New York City Code §§ 10–303; 10–304; 10–310 (misdemeanor to possess any firearm without permit and registration). We disagree.

The government cites numerous cases finding state offenses to be relevant conduct where the Guidelines refer to "other offenses." *See, e.g., United States v. Armstead,* 114 F.3d 504, 513 (5th Cir.1997) ("another felony offense," § 2K2.1(b)(5)); *United States v. Anderson,* 5 F.3d 795, 801 (5th Cir.1993) ("another offense," § 2A4.1); *United States v. Pollard,* 986 F.2d 44, 47 (3d Cir.1993)("another offense," § 2K2.1(c)); *United States v. Harris,* 932 F.2d 1529, 1537 (5th Cir.1991) (same); *United States v. Shinners,* 892 F.2d 742, 743 (8th Cir.1989) (same). However, these cases are inapposite because the applicable Guideline, § 2K2.1(b)(1), requires conduct to be relevant to "the offense." The only link between Ahmad's federal and state offenses is that they both involved possession of firearms, and both were discovered simultaneously. To be sure, both offenses involve illegal firearms possession, which provides superficial appeal to the government's position that possession of the seven uncharged firearms is relevant because it constitutes the "same course of conduct or common scheme or plan as the offense of conviction." Guidelines § 1B1.3(a)(2).

However, upon closer analysis the government's argument is flawed. Under § 1B1.3(a)(2) state offenses are not counted as conduct relevant to a federal offense unless the state offense would have been a federal offense but for lack of a jurisdictional element such as transportation across state lines or conduct that affects interstate commerce. *See Pollard,*

986 F.2d at 47 (transportation across state lines not part of the "true *malum in se* "); *see also United States v. Byrd,* 954 F.2d 586, 589 (9th Cir.1992); *United States v. Newbert,* 952 F.2d 281, 284 (9th Cir.1991); *United States v. Bos,* 917 F.2d 1178, 1181 (9th Cir.1990). Uncharged offenses can only be part of the "same course of conduct or common scheme or plan as the offense of conviction" where the offenses may be grouped under § 3D1.2(d). Guidelines § 1B1.3(a)(2) & § 1B1.3 Background Note. Section 3D1.2(d), in turn, specifies that counts are to be grouped "[w]hen the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm...." The purpose of the grouping rules is "to limit the significance of the formal charging decision and to prevent multiple punishment for substantially identical offense conduct...." Guidelines ch. 3 pt. D, Introductory Commentary ¶ 4. Implicit in the grouping rule, therefore, is a requirement that the uncharged offense is a "harm" under federal law, and that the defendant could have been charged with that offense absent jurisdictional and procedural bars. Conduct that may only be charged as a state crime, because it involves elements criminalized under state law that are not elements of a federal crime, may not be grouped under § 3D1.2(d) and thus may not be considered as "relevant conduct" under § 1B1.3(a)(2).

This principle was most recently reflected in *United States v. Martin,* 157 F.3d 46, 51 (2d Cir.1998), in which the defendant was convicted of interstate transportation of stolen property, in violation of 18 U.S.C. § 2314. The district court included as relevant conduct defendant's possession of an additional $60,000 worth of stolen equipment that he had not shipped interstate and that therefore could not be charged as a federal crime. In that context, the mere absence of a jurisdictional hook—specifically, interstate commerce—was "not relevant to [the] defen-

dant's criminal responsibility." *Id.* at 51. In other words, the federal crime contained all of the essential elements of the state crime, plus a jurisdictional hook; while the absence of jurisdiction barred federal prosecution of the possession of the additional stolen goods, it did not prevent counting this criminal activity as relevant conduct for the purpose of the federal offense.

In contrast, Ahmad's possession of the additional firearms violated state law by virtue of facts that were not elements of the federal crime. It was not just the absence of a jurisdictional element that prevented their federal prosecution, but that the state crime was defined by elements not criminalized under federal law. Thus possession of these additional firearms should only have given Ahmad a two-point enhancement for the six firearms for which he was convicted.

## II. The Obliterated Serial Number Enhancement.

■ Ahmad argues that the district court erroneously double counted when applying the § 2K2.1(b)(4) enhancement for possession of a firearm with an obliterated serial number because the underlying offense included possession of a firearm with an obliterated serial number under 18 U.S.C. § 922(k). We disagree.

Application Note 12 of the Sentencing Guidelines § 2K2.1 specifies that:

[I]f the only offense to which § 2K2.1 applies is 18 U.S.C. § 922(k) ... (offenses involving an altered or obliterated serial number) and the base offense level is determined under subsection (a)(7), do not apply the adjustment in subsection (b)(4) unless the offense involved a stolen firearm or stolen ammunition. This is because the base offense level takes into account that the firearm had an altered or obliterated serial number.

The base offense level in this case was determined not under subsection (a)(7), but under subsection (a)(5) because one of the firearms was a sawed-off shotgun as

described in 26 U.S.C. § 5845(a). *See* Guidelines § 2K2.1(a)(5). Thus, the base offense level applied in this case does not include the obliterated serial number on the semiautomatic pistol, Application Note 12 does not apply, and the adjustment was proper. *See United States v. Ortiz,* 64 F.3d 18, 20 (1st Cir.1995) (enhancement for obliterated serial number proper unless the only factor that renders possession of the firearm illegal is an obliterated serial number, and there are no other offenses to which § 2K2.1 applies).

## III. The Enhancement for Transfer of a Firearm.

■ Ahmad claims that there was no legal or factual support in the record for the district court's conclusion that he had given his nephew, Eldon Brown, a firearm with reason to know it would be used or possessed in connection with another felony, and that the four-level upward adjustment under § 2K2.1(b)(5) was therefore improper. We disagree.

The government recommended the adjustment in light of Brown's testimony at trial, relying on a conversation he had with Ahmad at which Brown expressed concerns about his ability to go through with a contract killing. According to Brown, Ahmad suggested that Brown "practice" by killing "somebody who doesn't really contribute to society," such as a "bum," a "cab driver," or a "peasant." Brown also testified that Ahmad gave him a gun during a subsequent visit.

Ahmad argues that Brown is an unreliable witness and the story is so unbelievable that basing an enhancement on it would be clear error. The district court found that "the general outlines of what [Brown] testified to, the jury believed," but did not rely on Brown's testimony other than to establish that Ahmad had given Brown a gun. That finding is not clearly erroneous. In also finding that Ahmad had reason to know that the gun he gave Brown would be used or possessed in con-

nection with another felony offense, the district court relied on an underlying finding that Ahmad knew Brown to be a killer who had been hired to commit further murders months before Ahmad gave him a gun. This underlying finding is not clearly erroneous in light of the general outlines of Brown's testimony and Ahmad's relationship with Brown. The § 2K2.1(b)(5) adjustment was therefore appropriate.

## IV. Obstruction of Justice Enhancement.

The government recommended a two-level enhancement pursuant to § 3C1.1 for obstruction of justice for two independent reasons: (1) Ahmad allegedly threatened Brown not to testify; and (2) Ahmad submitted a perjurious affidavit in support of his motion to suppress evidence, stating that "I never received any guns or gun paraphernalia which I placed into a closet, nor did I keep any guns inside that same closet." Ahmad argues that the obstruction of justice adjustment was erroneous because Brown's testimony that he had been threatened was not credible and the affidavit was neither material nor false. We disagree.

The district court imposed the obstruction of justice enhancement solely on the basis of the affidavit. Since we believe that an adjustment on that basis was supported by the record we will not consider the government's alternative argument.

The court found that the trial testimony and jury verdict established that Ahmad kept the guns inside the closet, contrary to Ahmad's sworn statement. The district court also found that the false affidavit could have influenced the suppression motion and therefore was material. *See* Guidelines § 3C1.1 Application Note 6 (defining a material statement as one that "if believed, would tend to influence or affect the issue under determination"). Neither finding is clearly erroneous. The district court's conclusion that Ahmad had committed perjury was therefore proper and the obstruction of justice enhancement appropriate. *See United*

*States v. Walsh,* 119 F.3d 115, 121–22 (2d Cir.1997).

### Conclusion

Affirmed in part, reversed in part and remanded.