### UNITED STATES of America

v.

### Melvin WEINTRAUB, Morelite Development and Construction, Inc., Liberty Realty Associates, LLC, Arthur Harris.

### No. 3:98CR171 (JBA).

United States District Court, D. Connecticut.

April 18, 2000.

---

Ira B. Grudberg, William M. Bloss, Jacobs, Grudberg, Belt & Dow, P.C., New Haven, CT, Stanley A. Twardy, Jr., Jennifer L. Sachs, Day, Berry & Howard, Stamford, CT, James T. Cowdery, Thomas J. Murphy, Cowdery, Ecker & Murphy, Hartford, CT, for Melvin Weintraub, defendant.

Jeffrey A. Meyer, Stephen C. Robinson, U.S. Attorney's Office, New Haven, CT, Sharon E. Jaffe, U.S. Attorney's Office, Bridgeport, CT, Andrew E. Lauterback, U.S. E.P.A., Boston, MA, for U.S.

## RULING ON DEFENDANT'S OBJECTION TO APPLICATION OF U.S.S.G. § 2Q1 .2(b)(4)

ARTERTON, District Judge.

At trial, Melvin Weintraub was convicted of conspiracy to violate the Clean Air Act (Count One) as well as six counts of substantive violations of the work practices standards promulgated under the Clean Air Act (Count Two through Seven). Defendant has filed his objection to the imposition of a four level increase under U.S.S.G. § 2Q1.2(b)(4) for the specific offense characteristic applicable "[i]f the offense involved transportation, treatment, storage or disposal without a permit or in violation of a permit" as recommended by the United States Probation Office. *See* Presentence Report ¶ 60. In its Sentencing Memorandum, the Government recommends that the Court calculate Weintraub's sentence in the following manner:

| | |
|---|---|
| Base offense level (§ 2Q1.2(a)) | + 8 |
| Repetitive discharge (§ 2Q1.2(b)(1)(A)) | + 6 |
| Discharge without a permit (§ 2Q1.2(b)(4)) | + 4 |
| Role in offense (§ 3B1.1(b)) (organizer/leader) | + 4 |
| FINAL OFFENSE LEVEL | +22 |

The narrow issue before the Court is whether Section 2Q1.2(b)(4) is applicable to Defendant's offenses of conviction of conspiracy to violate the Clean Air Act, 42 U.S.C. § 7413, and six substantive counts of violating the Clean Air Act, 42 U.S.C. § 7413(c)(2)(B) and § 7412, specifically the regulatory work practice standards including failure to notify Environmental Protection Agency of asbestos removal; failure to remove asbestos before wrecking and dismantling; failure to wet asbestos during removal; failure to ensure asbestos remained wet prior to collection; failure to put asbestos in leak-proof and warning-labeled containers and illegal dumping of asbestos. Although there is no permit requirement for renovation and demolition activities involving asbestos under the federal regulatory scheme of the Clean Air Act, the Government contends that this enhancement is warranted here because the asbestos disposal was done without obtaining prior written authorization from the Connecticut Department of Environmental Protection as required under state regulations. The Government concedes there is no pertinent permit requirement under the Clean Air Act or under any of the corresponding federal regulations and as well that failure to obtain Department of Environmental Protection prior authorization is not a crime in Connecticut. Instead, the Government contends that the U.S.S.G. § 2Q1.2(b)(4) enhancement may be based on the violation of the state regulations which require:

> Disposal of asbestos waste shall be at an authorized asbestos disposal facility. If the authorized asbestos disposal site is located within Connecticut, written authorization for disposal shall be obtained from the Department of Environmental Protection, Bureau of Waste Management.

Regs. Conn. State Agencies § 19–332a–5(1). Similarly, Section 22a–209–8(i) provides "[n]o asbestos shall be disposed of until the Commissioner issues specific written authorization and it is received by the operator of the disposal area, the generator, and the authorized hauler of the

asbestos waste." While the Government acknowledges there is nothing denominated a "permit" under state law, it contends that for all intents and purposes the "written authorization" requirement described above is essentially a permit requirement, or at the very least such authorization is the functional equivalent of a permit requirement under both the ordinary and commonsense meaning of "permit" and how the term is used under various state and federal laws.

Defendant argues that first, this specific offense characteristic "cannot apply where the offense of conviction does not involve noncompliance with a permitting program." Def.'s Objection 19–20. In other words, Defendant reads the U.S.S.G. § 2Q1.2(b)(4) enhancement as only applying if there is a permit system or requirement imposed under federal law. In the alternative, Defendant contends that even if the Court were to construe § 2Q1.2(b)(4) as applicable for violation of a state permission requirement, the "written authorization" requirement is not the same as or equivalent to a "permit." The Government responds that this argument works a semantic contortion of the Sentencing Guidelines which should not be entertained.

Even assuming arguendo that the Connecticut authorization requirement constitutes a permit requirement, the Court must determine whether this state regulatory requirement can be the basis for this Sentencing Guideline enhancement. The Government and Defendant both acknowledge that this issue is a matter of first impression in the Second Circuit.[1]

It is undisputed that there is no permit requirement of any sort for the disposal of asbestos under the Clean Air Act. *See* 40 C.F.R. § 70.3(b)(4) (2000) ("Unless otherwise required by the State to obtain a part 70 permit, the following source categories are exempted from the obligation to obtain a part 70 permit: ... (ii) All sources and source categories that would be required to obtain a permit solely because they are subject to part 61, subpart M—National Emission Standard for Hazardous Air Pollutants for Asbestos, § 61.145, Standard for Demolition and Renovation."); 57 Fed. Reg. 32250, 32263 (1992) ("The burden imposed by requiring permits for asbestos demolition and renovation sources is unnecessary because it would provide few additional environmental or enforcement benefits"). Furthermore, the Clean Air Act contains no delegation of permitting authority or any incorporation of state permitting requirements related to the handling of regulated asbestos containing materials. Therefore, while Connecticut's prior written authorization requirement is not preempted by the Clean Air Act, it is also not incorporated into federal law, but instead exists as an independent and concurrent regulation to those requirements imposed by the Environmental Protection Agency work practice standards.

---

1. Interestingly, two different panels of the Third Circuit have considered this precise issue and resolved it with opposite outcomes in unpublished opinions. *See United States v. Banks*, 1999 WL 257647 (E.D.Pa.1999) (denying Section 2255 motion based on differing results by separate panels). In *United States v. Burrell*, 101 F.3d 692 (3rd Cir. 1996), the panel reversed the defendant's conviction on two substantive counts of violating the Clean Air Act and remanded for resentencing on the conspiracy count under circumstances where the only permit required was one imposed by the City of Philadelphia. *Id.*

There is no federal basis for invocation of section 2Q1.2(b)(4), and we find no expres-

sion in that section that the Sentencing Commission intended to include a permit required by a city as grounds for enhancement of a prison term. Because of the possibility of "double counting" in these circumstances, we suggest therefore that, on resentencing the district court delete the enhancement for failure to secure a City permit.

In *United States v. Banks,* 107 F.3d 8 (3rd Cir. 1997), a subsequent panel summarily affirmed the conviction and sentencing of Banks, a co-defendant of Burrell, notwithstanding Banks' challenge to the Section 2Q1.2(b)(4) enhancement.

In contrast to the federal regulatory scheme for asbestos handling under the Clean Air Act's regulations, several other environmental statutes contain an express federal permit requirement, *see e.g.,* 43 U.S.C. § 1350(c) (creating criminal liability for violating a permit issued under chapter governing submerged lands near continental shelf); 7 U.S.C. § 136j (making it unlawful to exceed the "experimental use permit" issued by EPA for a pesticide); or delegate the permitting function to the states, *see* 33 U.S.C. § 1319(c)(1) & (2) (prohibiting negligent and knowing violation of any permit condition or limitation in an effluent discharge of pollutant permit issued under Section 1342 which creates permitting scheme under EPA or the states if approved by EPA). Therefore, absent any federal requirement of any permit related to asbestos handling under the Clean Air Act, expressly or by delegation to state regulatory schemes, Weintraub's offense of conviction is unrelated to his noncompliance with the state prior authorization requirement and the Court concludes that Section 2Q1.2(b)(4) is therefore inapplicable to Weintraub's offense.

This result is consistent with the approach the Second Circuit recently applied in interpreting U.S.S.G. § 2K2.1(b)(1), providing an offense level increase based on the number of firearms possessed, where the defendant was convicted of possession of certain firearms proscribed under 18 U.S.C. § 922(k) and 26 U.S.C. § 5861(d). *See United States v. Ahmad,* 202 F.3d 588 (2d Cir.2000). In *Ahmad,* the Second Circuit held that for purposes of determining the "specific offense characteristic" set forth in § 2K2.1(b)(1) applicable to firearm convictions: "state offenses are not counted as conduct relevant to a federal offense unless the state offense would have been a federal offense but for lack of an interstate jurisdictional element such as transportation across state lines or conduct that affects interstate commerce." Therefore, the *Ahmad* court reasoned, the fact that defendant possessed additional guns illegally under state law, but not otherwise proscribed under federal law, such guns could not be counted in calculating the specific offense characteristic based on the number of firearms under § 2K2.1(b)(1). Applying the reasoning of *Ahmad* to this case, the four level enhancement under § 2Q1.2(4)(B) would only apply if the failure to obtain a state permit otherwise constituted a "federally proscribed act" but for an interstate jurisdictional hook. *Ahmad,* 202 F.3d at 590. Given that the Clean Air Act does not require or otherwise incorporate Connecticut's prior authorization requirement, Weintraub's failure to satisfy this state requirement is not relevant to Weintraub's federal offense and thus cannot be a specific offense characteristic of it.

The Government relies on *United States v. Goldfaden,* 959 F.2d 1324 (5th Cir.1992) for the general proposition that other courts have applied the "no permit" adjustment despite the fact that the permits at issue were rooted in state or local law. The Court views this reliance as misplaced with respect to asbestos demolition and removal under the Clean Air Act. While it is true the enhancement was applied in *Goldfaden* where the defendant was convicted of discharging hazardous waste into the Dallas Sewer System in violation of a permit issued under a Dallas ordinance and the Clean Water Act, 33 U.S.C. § 1319(c)(2)(A), there was no challenge to the enhancement's applicability based on the issuance of the permit by the city. The Clean Water Act expressly imposes criminal liability on "[a]ny person who— knowingly violates [various sections imposing requirements under the Clean Water Act], or any permit condition or limitation implementing any of such sections in a permit issued under Section 1342 of this Title by the Administrator or by a State...." 33 U.S.C. § 1319(c)(2)(A). Given that the Clean Water Act expressly permits states to create their own permitting systems in lieu of a federal permitting system, *see* 33 U.S.C. § 1342, it is logical to presume that the *Goldfaden* permit was

issued under the state permitting system incorporated into federal law by the Clean Water Act. In contrast, under the Clean Air Act, there is no permit requirement or any delegation or incorporation of any state permit requirement. Given this important difference in regulatory mechanisms under the Clean Air Act and other environmental statutes imposing a permit requirement to which Section 2Q1.2(b)(4) clearly applies, *see e.g., United States v. Sellers,* 926 F.2d 410, 417 (5th Cir.1991) (applying Section 2Q1.2(b)(4) enhancement based on defendant's failure to obtain city permit in violation of Resource Conservation and Recovery Act "RCRA", 42 U.S.C. § 6928(d), imposing criminal liability for failure of an owner or operator of a hazardous waste treatment, storage or disposal facility to comply with permit requirements); *United States v. Ferrin,* 994 F.2d 658, 664–65 (9th Cir.1993) (same), the Court concludes that those decisions which have applied the enhancement based on local or state permitting requirements authorized to be imposed under federal environmental statutes are not instructive here.

The Government also relies on *United States v. Paccione,* 751 F.Supp. 368, 372, 376 (S.D.N.Y.1990), in which the district court increased under Section 2Q1.2(b)(4) the Guidelines offense level of two defendants who were convicted of mail fraud, racketeering and conspiracy in connection with an elaborate plan to illegally dump waste, including asbestos containing materials, in violation of the permit which authorized them to conduct a clean fill grading operation, since the underlying fraud involved the illegal dumping of waste into the environment. Neither the district court's opinion nor the Second Circuit's affirmance on other grounds, *see U.S. v. Paccione,* 949 F.2d 1183 (2d Cir. 1991), reflect consideration of the grounds raised by Weintraub. Moreover, there is no indication in *Paccione* as to the source or authority under which the fill operation permits were issued to these defendants. Perhaps this issue was not raised

in *Paccione,* since permits for landfill operations are issued under RCRA which imposes a federal permitting requirement. Absent clear articulation of the basis for application of this enhancement under those circumstances, the Court does not find *Paccione* weighs against the Court's interpretation of this sentencing guideline under the circumstances of this case.

Thus, the independent Connecticut administrative authorization requirement which is unrelated to any federal regulatory scheme cannot serve as the basis for the enhancement of Weintraub's sentence for his convictions under the Clean Air Act. Accordingly, Weintraub's objection to the United States Probation Offices calculation of the applicable offense level employing the four level increase under U.S.S.G. § 2Q1.2(b)(4) is sustained, and that enhancement will not be utilized in calculating his offense level at sentencing.

IT IS SO ORDERED.