**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1574
_____

UNITED STATES OF AMERICA

v.

JOSEPH D. MAURIZIO, JR.,
Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civ. No. 3-14-cr-00023-001)
District Judge: Honorable Kim R. Gibson
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 19, 2017
_____

Before: AMBRO, VANASKIE, and SCIRICA, Circuit Judges

(Opinion Filed: July 24, 2017)
_____

OPINION*
_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

VANASKIE, Circuit Judge

Joseph Maurizio appeals his conviction for engaging in illicit sexual conduct in foreign places with a minor, possession of child pornography, and sending checks to Honduras to promote illicit sexual conduct with a minor. The prosecution arose from Maurizio's formation and management of ProNiño Honduras—a drug treatment, dormitory, and Catholic education center for orphaned boys. On appeal, Maurizio argues (1) that the weight of the evidence did not support his conviction on counts relating to illicit sexual conduct with a minor and possession of child pornography; (2) that the Government withheld material exculpatory evidence with respect to one of the counts of illicit sexual conduct with a minor; (3) that the weight of the evidence did not support his conviction on the count of sending checks to promote illicit sexual conduct with a minor; and (4) that the District Court abused its discretion in admitting unfairly prejudicial "other acts" evidence. We will affirm the orders of the District Court in all respects.

I.

Maurizio, a Catholic priest, began traveling in the mid-1990s to Honduras, where he met an American man, George Mealer, who ran a charity to help poor children. In 1999 the two founded ProNiño Honduras. Maurizio solicited donations from his parishioners in Pennsylvania and created a charity, Honduras Interfaith Ministries ("HIM"), to help raise more money. Throughout the 2000s, Maurizio returned to Honduras every March and October. In 2005, Maurizio began sending Mealer checks drawn on an HIM account with instructions to cash them for Honduran currency.

Shortly after Maurizio's March 2009 visit, ProNiño's donors began to pull funding based on allegations of financial irregularities, sexual abuse, and drug use. Maurizio emailed Mealer, warning him that there may be "other stories coming out to discredit [Maurizio] and [his] mission," but that he was "not worried about the sex scandal because people involved should be gone (like Ludie over 18?)." (App. 430.) Maurizio left Honduras and told Mealer he would not return again. After Maurizio's departure, control of ProNiño changed hands and interviews with the boys revealed that Maurizio had been sexually abusing them and using funds from HIM for his personal use— including paying the boys he abused.

A few years later, the U.S. Department of Homeland Security ("DHS") began an investigation into Maurizio's activities. DHS eventually located three of Maurizio's victims, Otoniel, Erick, and Ludin, as well as two boys, Luis and Fredis, who had witnessed instances of abuse. Following interviews with the boys, DHS executed search warrants at Maurizio's rectory in Pennsylvania. On the rectory computer were several photos of nude boys swimming as well as a folder containing two photos of nude boys posed on a bed. Another folder contained images of Otoniel, Ludin, Erick, and Fredis. Metadata proved that Maurizio's camera captured these images and an analysis of his computer's registry file verified that his camera had been connected to his computer.[1] Bank records and emails also indicated that money that HIM donated to ProNiño had been provided to Maurizio upon his arrival in Honduras.

---

[1] This metadata consisted of data imbedded within the image files which provided information such as the date the picture was taken, the focal length used, and the make and model of the camera.

In 2015 a grand jury returned an eight-count indictment. Counts One, Three, Four, and Five allege that Maurizio knowingly traveled in foreign commerce and engaged in illicit sexual conduct with a minor in violation of 18 U.SC. § 2343(c). Counts One and Three addressed conduct involving Otoniel and Erick, respectively. Counts Four and Five pertained to conduct involving Ludin. Count Two charged Maurizio with knowingly possessing one or more visual depictions of minors engaging in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(4)(B). Counts Six through Eight each charged Maurizio with knowingly transporting checks to a place outside the United States with the intent to promote engaging in illicit sexual conduct in foreign places in violation of 18 U.S.C. § 1956(a)(2)(A). All five boys testified at Maurizio's trial and four of the boys stated to the jury that they had either experienced or witnessed Maurizio's abuse. Ludin, however, recanted his previous statements and testified that he had fabricated the story he told investigators.

The jury convicted Maurizio on Counts One, Two, Three, Four, and Eight, but acquitted him of Counts Five through Seven. The District Court subsequently granted Maurizio's Rule 29 motion for judgment of acquittal with respect to Count Four, but denied the motion on all other counts. Maurizio then filed a Rule 33 motion for a new trial arguing (1) that the weight of the evidence was insufficient to sustain the convictions; (2) that the Government engaged in prosecutorial misconduct; and (3) that the District Court improperly instructed the jury as to the attempt to engage in illicit sexual conduct in a foreign place. The District Court denied the motion, and Maurizio filed a second Rule 33 motion alleging the discovery of material exculpatory evidence

4

that the Government withheld in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Once again, the District Court denied the motion. Maurizio was sentenced to a prison term of 200 months followed by a life term of supervised release. Maurizio then filed this timely appeal.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291. We review the denial of Rule 33 motions for a new trial for abuse of discretion. *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002). Where such a motion is based on a *Brady* claim, which presents questions of both law and fact, we review conclusions of law *de novo* and findings of fact for clear error. *United States v. Pelullo*, 399 F.3d 197, 202 (3d Cir. 2005). "We exercise plenary review over a district court's grant or denial of a motion for judgment of acquittal based on the sufficiency of the evidence, applying the same standard as the district court." *United States v. Starnes*, 583 F.3d 196, 206 (3d Cir. 2009). That standard requires that we "examine the totality of the evidence, both direct and circumstantial," and "interpret the evidence in the light most favorable to the government as the verdict winner." *Id.* (quoting *United States v. Miller*, 527 F.3d 54, 60, 62 (3d Cir. 2008)). We will "uphold the jury's verdict if there is substantial evidence from which a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt." *Id.* This is, of course, a "particularly deferential standard of review." *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998). Finally, we review the admission of "other acts" evidence under

5

Federal Rule of Evidence 404(b) for abuse of discretion." *United States v. Ciavarella*, 716 F.3d 705, 727 n.12 (3d Cir. 2013).

III.

Maurizio argues that the District Court (1) erred in denying his Rule 33 motions for a new trial on Counts One through Three, (2) erred in denying his Rule 29 motion for acquittal on Count Eight, and (3) improperly admitted "bad acts" evidence that unfairly prejudiced him at trial. We will address each of the arguments in turn.

*A. Rule 33 Motion for a New Trial*

Maurizio argues that the District Court erred in denying his motion for a new trial with respect to Counts One through Three. According to Maurizio, a new trial is warranted because the weight of the evidence does not support his conviction and because the Government suppressed *Brady* material.

"[A] court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "Even if a district court believes that the jury verdict is contrary to the weight of the evidence, it can order a new trial 'only if it believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted.'" *United States v. Silveus*, 542 F.3d 993, 1004–05 (3d Cir. 2008) (quoting *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002)). "Such motions are not favored and should be 'granted sparingly and only in exceptional cases.'" *Id.* at 1005 (quoting *Gov't of Virgin Islands v. Derricks*, 810 F.2d 50, 55 (3d Cir.1987)).

In deciding whether the weight of the evidence supports the conviction we look first to the elements of the charged offenses. *United States v. Brennan*, 326 F.3d 176, 190 (3d Cir. 2003). Counts One and Three required the Government to prove that Maurizio (1) is a United States citizen, (2) traveled in foreign commerce, and (3) engaged in illicit sexual conduct with a minor. 18 U.S.C. § 2423(c). Maurizio stipulated both that he traveled in foreign commerce during the relevant times and that both Otoniel and Erick were minors.

With regard to Count One, Otoniel testified directly to illicit sexual conduct taking place at the ProNiño church and both Luis and Erick testified to witnessing at least part of it. With regard to Count Three, both Erick and Luis testified that Maurizio abused Erick while Erick rode in the front seat of Maurizio's car. Now Maurizio contends that discrepancies in the boys' timeframes undermines their testimony and that the District Court's failure to acknowledge the inconsistency constituted a miscarriage of justice. The Government, however, presented expert testimony stating that victims of sexual abuse often confuse the times, dates, and duration of their encounters. Given the testimony provided by the boys and the experts' explanations for the temporal discrepancies, the District Court did not abuse its discretion in determining that the weight of the evidence supported the convictions on Counts One and Three.

Maurizio also argues that a new trial is necessary for Count Three because the Government withheld Erick's Victim Impact Statement ("VIS"), which he claims contradicts the statements he made at trial. Due process requires the Government to provide a criminal defendant with exculpatory material that it possesses. *Brady v.*

7

*Maryland*, 373 U.S. 83, 87 (1963).[2]  To establish a *Brady* violation sufficient to warrant a new trial, "a defendant must show: (1) evidence was suppressed; (2) the suppressed evidence was favorable to the defense; and (3) the suppressed evidence was material either to guilt or to punishment."  *United States v. Pelullo*, 399 F.3d 197, 209 (3d Cir. 2005).  Evidence is material when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *Kyles v. Whitley*, 514 U.S. 419, 434-35 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).  Reasonable probability is "a probability sufficient to undermine confidence in the outcome."  *Strickland v. Washington*, 466 U.S. 668, 694 (1984).  In determining whether the defendant has established materiality, a court must evaluate the cumulative effect of the undisclosed evidence.  *Kyles*, 514 U.S. at 436-37.

Maurizio contends that the Government violated *Brady* by suppressing Erick's VIS, which was taken after Maurizio rested his case but before the jury delivered its verdict.  During the interview, when asked if people treated him "differently since the crime," Erick responded, "Yes.  Sometimes they think badly about me, perhaps they think that he really abused (me), but that was not the case."  (App. 1501.)  Maurizio argues that this statement amounts to a recantation of Erick's trial testimony and thus should have been disclosed.

---

[2] When "reliability of a given witness may well be determinative of guilt or innocence," the nondisclosure of evidence affecting credibility, or impeachment evidence, falls within the scope of *Brady*.  *See Giglio v. United States,* 405 U.S. 150, 154 (1972) (internal quotations omitted).  Accordingly, "[m]aterials that must be disclosed are those . . . that might affect the jury's judgment of the credibility of a crucial prosecution witness."  *United States v. Hill*, 976 F.2d 132, 134-135 (3d Cir. 1992).

The District Court, although finding that the Government did suppress favorable evidence, concluded that a new trial was not warranted because the evidence was not material either to guilt or punishment. The court indicated the substantial independent evidence supporting the conviction. The court also noted that, during discussions with Erick after the VIS, DHS Special Agent Carlos E. Gamarra determined that Erick's apparent recantation could be attributed to a misunderstanding of the word "abuse," which Erick believed only applied to conduct that involved penetration—conduct he consistently said he had not experienced. Had Maurizio attempted to impeach Erick with the VIS at trial, the Government could have rehabilitated Erick's credibility through the testimony of Gamarra and Victim Assistance Specialist Jackie Block Goldstein, both of whom filed affidavits asserting that Erick had consistently stated that Maurizio had touched his penis and offered him money. Considering this evidence, and the confusion underlying the statement itself, we agree with the District Court that the failure to disclose the VIS does not "undermine confidence in the verdict." *See Kyles*, 514 U.S. at 435.

Maurizio also argues that the District Court erred in denying his motion for a new trial with respect to Count Two because the weight of the evidence was insufficient to support his conviction and because he had provided an affirmative defense. Count Two required the Government to prove that Maurizio knowingly possessed material that contained a visual depiction of a minor engaged in sexually explicit conduct. 18 U.S.C. § 2252(a)(4)(B). Maurizio does not dispute that DHS found two such images on the rectory computer. He argues instead that, since DHS found the images in the

9

"Recycle Bin," he "promptly and in good faith . . . took reasonable steps to destroy" them, thus entitling him to an affirmative defense. 18 U.S.C. 2252(c). The District Court noted, however, that, even had Maurizio placed the items in the "Recycle Bin," such evidence would not have warranted a new trial, because "the jury could have concluded that placing the photographs in the recycling bin was not equivalent 'to [taking] reasonable steps to destroy'" them. *United States v. Maurizio*, No. CR 3:14-23, 2015 WL 7769519, at \*11 (W.D. Pa. Dec. 1, 2015) (quoting 18 U.S.C. § 2252(c)(2)(A)). As the District Court noted, a reasonable jury could have found that a user does not actually delete files placed in a computer recycle bin as those files could be accessed at any time until the bin is manually emptied. *Id.* (citing *United States v. Hill*, 750 F.3d 982, 987–88 (8th Cir. 2014)). The District Court therefore did not abuse its discretion in denying Maurizio's Rule 33 Motion with respect to Count Two.

### B. *Rule 29 Motion for Judgment of Acquittal*

Maurizio argues that the District Court erred in denying his Rule 29 motion for judgment of acquittal as to Count Eight. Rule 29 allows the court to enter a judgment of acquittal if "the evidence is insufficient to sustain a conviction." Fed. R. Civ. P. 29. In considering a Rule 29 motion "a district court must 'review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence.'" *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005) (quoting *United States v. Smith*, 294 F.3d 473, 476 (3d Cir.2002). We apply a particularly deferential standard of review to the denial of Rule 29 motions because the reviewing court "must be ever vigilant . . . not

10

to usurp the role of the jury by weighing credibility and assigning weight to evidence." *United States v. Mercado*, 610 F.3d 841, 845 (3d Cir. 2010) (quoting *United States v. Boria*, 592 F.3d 476, 480 (3d Cir. 2010)).

Count Eight required the Government to establish that (1) Maurizio knowingly transported, transmitted, or transferred, or caused to be transported, transmitted or transferred, a monetary instrument or funds from a place in the United States to or through a place outside of the United States; and (2) Maurizio acted with the intent to engage in illicit sexual conduct in foreign places. 18 U.S.C. § 1956(a)(2)(A). According to Maurizio, the Government failed to establish his intent to engage in illicit sexual conduct in Honduras at the time he sent the check to ProNiño. The Government provided evidence of a $3,000 check that was to be paid to ProNiño with a memo line indicating that it was for a March 2009 trip. The Government also provided an email in which Maurizio stated that he sent the check and that he wanted the cash paid to him in specified increments upon his arrival. Testimony from an Internal Revenue Service Criminal Investigator confirmed that the total expenses of Maurizio's March 2009 trip was $3,000. Further, several of the boys testified that Maurizio either paid them or offered to pay them for various sexual acts. Given the evidence provided by the Government, "a rational trier of fact could [have found] the essential elements of the crime beyond a reasonable doubt." *United States v. Starnes*, 583 F.3d 196, 206 (3d Cir. 2009). The District Court therefore properly denied Maurizio's motion for judgment of acquittal on Count Eight.

*C. Other Acts Evidence*

11

Finally, Maurizio argues that the District Court erred in admitting evidence of prior bad acts. This evidence includes: (1) Fredis's testimony that, when he was a minor, Maurizio attempted to take pictures of him naked and bathing; (2) Fredis's testimony that, when he was an adult, Maurizio asked to take pictures of him undressing and masturbating; and (3) testimony regarding Maurizio's movement of HIM funds during his travels to Honduras. The District Court found that Fredis's testimony was admissible as intrinsic evidence and that all the evidence was admissible under Federal Rule of Evidence 404(b). The District Court did not abuse its discretion in so finding.

This Court has recognized categories of "intrinsic evidence" which are admissible without resorting to a Rule 404(b) analysis. *Green*, 617 F.3d at 248. In the first category, "evidence is intrinsic if it 'directly proves' the charged offense." *Id.* This formulation comports with Rule 404(b) because evidence of misconduct that "directly proves the charged offense . . . is not evidence of some 'other' crime." *Id.* at 249 (citing *United States v. Gibbs*, 190 F.3d 188, 219 (3d Cir. 1999)). At a minimum, Fredis's testimony regarding the pictures of him bathing as a minor and being offered money by Maurizio in exchange for being photographed while masturbating could demonstrate that Maurizio transmitted funds to Honduras with the intent of carrying on an unlawful activity. To the extent the evidence was outside the time period referenced in the Indictment, as Maurizio argues, the District Court determined that the evidence would still be admissible "as background or 'completes the story' evidence." *United States v. Maurizio*, No. CRIM. 3:14-23, 2015 WL 5177821, at *7 (W.D. Pa. Sept. 4, 2015) (citing *Green*, 617 F.3d at 249).

12

The District Court alternatively found all of the evidence admissible under Rule 404(b). Rule 404(b) bars the admission of evidence of a crime or bad acts "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). This evidence may be admitted, however, to prove "motive, opportunity, intent, preparation, plan knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).[3] The Supreme Court has established a four-part test to determine the admissibility of evidence under Rule 404(b). *See Huddleston v. United States*, 485 U.S. 681, 691–92 (1988). The evidence must "(1) have a proper evidentiary purpose; (2) be relevant; (3) satisfy Rule 403; and (4) be accompanied by a limiting instruction (where requested) about the purpose for which the jury may consider it." *United States v. Green*, 617 F.3d 233, 249 (3d Cir. 2010). With regard to the first factor, "[a] proper purpose is one that is 'probative of a material issue other than character.'" *Id.* at 250 (quoting *Huddleston*, 485 U.S. at 686). Under Rule 403, relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

---

[3] Maurizio additionally argues that the District Court improperly applied Rule 414 to admit Fredis's testimony. Rule 414 provides an additional exception to Rule 404(b)'s prohibition of evidence of prior convictions in cases of child molestation. Fed. R. Evid. 414(a). The District Court, however, did not rely on Rule 414 to admit Fredis's testimony. It only relied on Rule 414 to admit the testimony of the boys who witnessed Maurizio's illicit sexual conduct with other boys. Fredis's testimony was admitted under Rule 404(b)(2).

After conducting an analysis of the *Huddleston* factors, the District Court found that the evidence was admissible under Rule 404(b).  First, the evidence could be used to establish motive and knowledge and would supply "helpful background information to the finder of fact."  *Maurizio*, 2015 WL 5177821, at \*9 (citing *Green*, 617 F.3d at 250).  Second, the evidence was relevant in that it made it more probable that Maurizio committed the charged offenses and less likely that the conduct was the result of mistake or accident.  Third, the probative value was significant and it was not substantially outweighed by the danger of unfair prejudice, especially considering the amount of testimony regarding Maurizio's illicit sexual conduct over a period of years.  Finally, the District Court concluded that contemporaneous and final limiting instructions should be given for testimony regarding Maurizio's financial transactions.  Because the District Court found Fredis's testimony to be intrinsic, however, a limiting instruction was not necessary.[4]   Maurizio has not demonstrated that the District Court abused its discretion either in determining Fredis's testimony to be intrinsic or in admitting all of the proffered evidence under Rule 404(b).

IV.

We will affirm the orders of the District Court denying Maurizio's Rule 29 and Rule 33 motions.

---

[4] Labeling evidence intrinsic "relieve[s] the prosecution of Rule 404(b)'s notice requirement and the court of its obligation to give an appropriate limiting instruction upon defense counsel's request."  *Green*, 617, F.3d at 248.