**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1914
_____

UNITED STATES OF AMERICA

v.

BOLA PETERS,
a/k/a Bola M. Kassim;
a/k/a Muti Kassim;
a/k/a Rene Copley;
a/k/a Elizabeth Brown;

Bola Peters,
           Appellant

_____

On Appeal from the United States District Court
For the Western District of Pennsylvania
(D.C. Crim. Action No. 1-14-cr-00012-012)
District Judge: Honorable David S. Cercone

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 23, 2018

Before:  GREENAWAY, JR., KRAUSE, *Circuit Judges*,
and JONES, *District Judge*.[*]

(Opinion filed: February 15, 2018)

_____

[*] The Honorable John E. Jones, III, United States District Judge for the Middle
District of Pennsylvania, sitting by designation.

———————

OPINION[*]

———————

JONES, *District Judge*.

Bola Peters appeals her judgment of conviction for conspiracy to commit wire fraud. Ms. Peters argues that the evidence presented at trial was insufficient to prove her guilt beyond a reasonable doubt. For the reasons that follow, we will affirm.

## I.      Background

This case involves a years-long scheme of stealing identities, filing false tax returns with the stolen identities, and fraudulently collecting tax refunds. The IRS identified more than 1000 false tax returns between 2010 and 2012 alone. The fraudulent refunds were routed to more than 3600 bank accounts set up at 443 financial institutions across the United States. Because of the sheer number of false returns and bank accounts, the FBI subpoenaed bank records from a random sample of 100 bank accounts. Agents also sought ATM surveillance photos because the cash had been withdrawn from most of the accounts through ATM transactions. Although the FBI identified several major players in their investigation, many of the co-conspirators' roles consisted of opening bank accounts with stolen identities, withdrawing the refunds from ATMs, keeping a percentage, and transferring the remaining money to those of higher rank in the conspiracy. This was the role Ms. Peters played.

———————

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Ms. Peters's name appeared on one of the bank accounts in the 100-account sample, and authorities had identified fraudulent refunds among the deposits. The FBI obtained a search warrant for Ms. Peters's home, where they found a total of thirteen Social Security cards and New York State driver's licenses in different names in addition to one blank Social Security card. The FBI also located a notebook and other pages that had handwritten entries listing stolen identify information. Finally, authorities found a distinctive, multi-colored shirt that also was seen in ATM surveillance photos. None of the fraudulent identification documents found in Ms. Peters's home implicated her husband. Agents later interviewed Ms. Peters, who admitted that she used false identities to open bank accounts in 2008. She further said she was instructed to open the accounts by someone named Lowah, and that she would make cash withdrawals from an ATM, keep ten percent, and transfer the remainder of the withdrawal to Lowah. Ms. Peters also knew that others were involved in the scheme, although she did not know their roles or names.

In May 2015, a grand jury in the Western District of Pennsylvania returned a fifth superseding indictment accusing Ms. Peters and nearly two dozen others of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349. The matter went to trial in October 2016. At the close of the Government's case, Ms. Peters moved for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure, arguing insufficiency of the evidence, which the District Court denied. Ms. Peters called one witness and rested. On October 21, 2016, the jury found Ms. Peters guilty. She was sentenced to sixty months in

prison and a three-year term of supervised release. Ms. Peters now appeals her judgment of conviction.

## II.     Jurisdiction and Standard of Review

The District Court properly exercised jurisdiction of the underlying matter pursuant to 18 U.S.C. § 3231. We have jurisdiction to review appeals from all final decisions of the District Court pursuant to 28 U.S.C. § 1291.

"[W]e review a sufficiency of the evidence challenge *de novo*, viewing the evidence in the light most favorable to the prosecution." *United States v. Bryant*, 655 F.3d 232, 240 (3d Cir. 2011) (citing *United States v. Miller*, 527 F.3d 54, 60 (3d Cir. 2008)). Appellants bear a heavy burden. We "will overturn a verdict only 'if no reasonable juror could accept evidence as sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt.'" *Id.* (quoting *United States v. Anderskow*, 88 F.3d 245, 251 (3d Cir. 1996)). "Under this particularly deferential standard, we 'must be ever vigilant . . . not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting [our] judgment for that of the jury.'" *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 430 (3d Cir. 2013) (alteration in the original) (quoting *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005)). "Furthermore, 'we review the evidence as a whole, not in isolation, and ask whether it is strong enough for a rational trier of fact to find guilt beyond a reasonable doubt.'" *Id.* (quoting *U.S. v. Boria*, 592 F.3d 476, 480 (3d Cir. 2010)).

4

## III. Discussion

Ms. Peters was convicted of conspiracy to commit wire fraud pursuant to 18 U.S.C. § 1349. To prove its case, the Government needed to prove that Peters agreed with one or more persons to commit wire fraud, which consists of three elements: "(1) the defendant's knowing and willful participation in a scheme or artifice to defraud, (2) with the specific intent to defraud, and (3) the use of . . . interstate wire communications in furtherance of the scheme." *United States v. Andrews*, 681 F.3d 509, 518 (3d Cir. 2012) (quoting *United States v. Antico*, 275 F.3d 245, 261 (3d Cir. 2001)). Ms. Peters argues that the Government failed to prove the first element. We disagree.

Ms. Peters admitted that she had been instructed to open bank accounts with stolen identities, had withdrawn the fraudulent tax refunds, and had skimmed her allotted ten percent and wired the remainder to "Lowah." She also admitted that she knew there were other co-conspirators, even if she did not know their names. These admissions alone were sufficient to prove the first element of wire fraud. Ms. Peters's suggestion that the Government needed to produce witnesses who could provide direct evidence of her knowledge of the scheme is unpersuasive. Ms. Peters amply demonstrated her knowledge in her voluntary statement to the authorities. Moreover, "finding of guilt in a conspiracy case does not depend on the government introducing direct evidence that a defendant was a knowing participant in the conspiracy; circumstantial evidence can carry the day." *United States v. Claxton*, 685 F.3d 300, 305 (3d Cir. 2012). In addition to Ms. Peters's own admissions, the circumstantial evidence – including the identification documents in several names, the ledgers of stolen identity information, and the surveillance photos

showing the same shirt found in her home – clearly provided sufficient evidence from which a rational juror could infer guilt. The circumstantial evidence was overwhelming and pointed only to Ms. Peters, not her husband. Therefore, with deference to the jury's verdict, and viewing the evidence in the light most favorable to the Government, we find the evidence was sufficient and affirm the judgment of conviction.

## IV.     Conclusion

For the foregoing reasons, we will affirm the judgment of conviction.